**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No: 1:17-cr-110-CRC** |
| **SHAN SHI, *et al.*,** | |
| **Defendant.** | |

**DEFENDANT'S EXPEDITED MOTION**
**FOR EARLY TERMINATION OF PROBATION**

Defendant Dr. Shan Shi respectfully moves the Court for early termination of his supervised release pursuant to 18 U.S.C. § 3583(e)(1), or in the alternative, requests permission to travel to China so that he can maintain his employment with a wind energy company[1] in China that requires him to be in-person for several months. Dr. Shi is the sole source of support for his family of four, and it is critically important that he be able to maintain this job.

Dr. Shi's 30-month term of supervised release began on September 17, 2020, and expires on March 17, 2023. Dr. Shi has completed more than half of his supervisory term, and according to his probation officer, has been an exemplary supervisee who is appropriate for early termination. Rejecting probation's recommendation (and ignoring every factor weighed in evaluating early termination of parole), the government—which opposes the instant motion—seeks to enhance Dr. Shi's sentence by effectively imposing a new punishment: Dr. Shi should be prohibited from supporting his family by working in offshore energy projects completely unrelated to his offense

---

[1] Dr. Shi's employer is Kyotta New Energy Technology Company. Kyotta Technology is a high-tech enterprise providing consulting in onshore and offshore wind power development, construction and operation and maintenance, and also provides technical service in offshore wind areas such as underwater structure monitoring, inspection and evaluation.

of conviction. This Court should, however, weigh the applicable factors, which all support early termination of Dr. Shi's probation.

I.   **BACKGROUND**

A jury convicted Dr. Shi of one count of conspiracy to commit theft of trade secrets in August 2019. ECF No. 260. In February 2020, the Court sentenced Dr. Shi to 16 months of prison, and recommended placement in a minimum security facility. Sentencing Tr. at 81, 85 (Feb. 10, 2020). Dr. Shi served approximately 35 percent of his sentence before the COVID-19 pandemic struck and he fell ill with the virus. After requesting compassionate release, this Court reduced Dr. Shi's prison sentence to time served and ordered his immediate release from federal detention on September 16, 2020. ECF No. 383 at 6. The Court reset his supervised release to 30 months, and further ordered home detention for the first six months after release. *Id.*

Since returning home, Dr. Shi has been a model supervisee. He had a seamless reintegration into his community, moving back into his family home and reuniting with his wife and children. While on home detention, Dr. Shi immediately began to rebuild his career in oceanic energy projects. For approximately the past year, he has worked remotely on an offshore wind turbine project for Kyotta Energy.[2] Dr. Shi has complied with all conditions of his supervised release, and has not missed a reporting deadline or meeting.

Because of his need to travel to China to maintain his employment with Kyotta Energy, Dr. Shi first inquired about early termination of his supervised release in June 2021. He realized then that he would only be able to work remotely on the wind turbine project to a point, and that he would eventually have to travel to China to oversee and participate in important engineering tasks, such as access system development of the wind turbines, hardware fabrication, integration,

---

[2] The wind turbine project has nothing to do with syntactic foam, oil and gas exploration, or Trelleborg.

shop-testing, on-site testing, safety investigations and monitoring, and quality control.[3] None of these tasks can be performed remotely.

Last October, Dr. Shi raised the issue of international travel with a probation supervisor in the Southern District of Texas, where he is being monitored. After discussing the details, the supervisor informed Dr. Shi that she would approve his request once he submitted documentation of the reasons for the travel. Dr. Shi submitted his letter request on December 10, 2021 (**Ex. A**), and purchased a plane ticket for late December 2021. After reviewing his request, however, probation could only approve international travel for only 21 days. Dr. Shi cancelled the ticket, and informed probation that his presence was required in China for as long as six months. At that point, probation completed a holistic analysis of Dr. Shi's conduct while on supervised release, and determined that he was an appropriate candidate for early termination. Dr. Shi's probation officer, Eddie De Leon, drafted a summary of Dr. Shi's performance while on supervised release and forwarded it to the probation office in the District of Columbia for consideration. *See* **Ex. B**.

Believing he would soon be permitted to travel, Dr. Shi booked a flight to Beijing for February 28, 2022.[4] He repeatedly checked on the status of the request with Mr. De Leon, who informed him several times that the request was pending and would soon be processed. *See* **Ex. C**. On January 20, 2022, Dr. Shi was transferred to the Low Threat Caseload status in the probation office, requiring him only to submit e-reports through an online portal. *See* **Ex. D**. Dr. Shi trusted that his request would be approved based upon the totality of these circumstances. But eight days

---

[3] The wind turbine project will require travel to multiple locations, including offshore in the East China Sea, and cities such as Shanghai and the Shandong province. The main office for the project is located at the client company's Beijing office - Kyotta New Energy Technology Development Co., Room D309, Zhongguancun Development Building, Shangdi, Haidian District, Beijing. Dr. Shi has reported all the places where he must go to his probation officer.

[4] This motion is expedited because, as explained below, Dr. Shi's flight is scheduled for February 28, 2022. Therefore, the defense respectfully requests expedited briefing and consideration.

later, Tanya Boone of the DC Probation Office informed Mr. De Leon that the government was opposed to both early termination and the travel request. *See* **Ex. E**.

Although Dr. Shi initiated his request months ago and his probation officer has recommended early termination and approved international travel, he is in danger of missing a rare flight to Beijing[5] and compromising all of the work performed on the wind turbine project. As the sole source of income for his family of four, this Chinese-based project is critical for his livelihood. Dr. Shi is the primary consultant for Kyotta Energy's efforts to develop wind turbine technology, and his remote work has consisted of developing the critical mathematical and engineering equations necessary for the turbines, in addition to designing the turbines themselves. If Dr. Shi is unable to travel and oversee the upcoming integration phase of the project, there is a high likelihood that the project will founder and Kyotta Energy will be at risk of losing its development contract.[6]

## II.    LEGAL STANDARDS

A court can terminate probation "at any time after the expiration of one year of probation" "after considering the factors set forth in section 3553(a)" "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c).

> When considering a request for early termination of supervised release, the Court must first consider: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) deterrence of criminal conduct; (3)

---

[5] The February 28, 2022, flight is critical for Dr. Shi, because China has begun severely restricting international flights throughout the month of March. Dr. Shi's visa, which took him over two months to obtain, requires him to enter China no later than March 15, 2022. *See* **Ex. F**. As explained in the body of this Motion, the wind turbine project has already been in a holding pattern for the past few months due to Dr. Shi's inability to travel, and additional delays, including going through the application process for a new visa, will seriously jeopardize the project's feasibility.

[6] In addition to the need to travel for the wind turbine project, there are compelling personal reasons for Dr. Shi's travel as well. Dr. Shi has not been back to China since 2017 (before his indictment) and, as a result, he has not visited his family in nearly five years. Dr. Shi's parents are both deceased. His only remaining living relative is his uncle, who is 100 years old, and Dr. Shi would like to pay a final visit to this close relative.

protection of the public from further crimes of the defendant; (4) the need to provide the defendant with education or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

*United States v. Raymond*, No. 09-183 (RMC), 2019 WL 1858285, at *1 (D.D.C. Apr. 25, 2019).

"The Court is required to consider all the statutory factors, but need not make specific findings as to each one." *United States. v. Etheridge*, 999 F. Supp. 2d 192, 195 (D.D.C. 2013). "In considering these factors . . . courts must recognize that supervised release 'serves as entirely different purpose than the sentence imposed under § 3553(a),' since '[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration.'" *United States v. Hughes*, No. 93-97 (BAH), 2020 WL 3448008, at *2 (D.D.C. June 24, 2020) (quoting *Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011); *United States v. Johnson*, 529 U.S. 53, 59 (2000)) (alteration in original). "The relevant factors under § 3553(a) are, consequently, evaluated mindful of the Supreme Court's clear articulation of the purpose of supervised release and the district court's discretion to limit terms of supervised release to those who need it." *United States v. Harris*, 258 F. Supp. 3d 137, 145 (D.D.C. 2017).

The Judicial Conference has listed several other relevant factors for courts to consider when analyzing the propriety of early termination. Specifically:

Officers should consider the suitability for early termination for offenders as soon as they are statutorily eligible. The general criteria for assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:

1.   stable community reintegration (e.g., residence, family, employment);

2.   progressive strides toward supervision objectives and in compliance with all conditions of supervision;

3.   no aggravated role in the offense of conviction, particularly large drug or fraud offenses;

4.      no history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

5.      no recent arrests or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct;

6.      no recent evidence of alcohol or drug abuse;

7.      no recent psychiatric episodes;

8.      no identifiable risk to the safety or any identifiable victim; and

9.      no identifiable risk to public safety based on the Risk Prediction Index.

Guide to Judiciary Policy, Vol. 8E, Ch. 3 section 380.10(b), "Early Termination" (Monograph 109) (rev'd 2010); *see also Etheridge*, 999 F. Supp. 2d at 195 (adopting same).

Moreover, the courts have been further instructed to consider early termination of supervised release in "an effort to reduce expenditures in the probation and pretrial services programs." *United States v. Martinson*, No. 2:08-cr-00294-WBS, Unopposed Mot. for Early Termination of Supervised Release at 3 (E.D. Cal. July 8, 2014), https://www.govinfo.gov/content/pkg/USCOURTS-caed-2_08-cr-00294/pdf/USCOURTS-caed-2_08-cr-00294-55.pdf. Specifically, Judge Robert Holmes Bell, the Chair of the Committee on Criminal Law of the Judicial Conference, issued a memo in 2012 to all district courts advising them to terminate "appropriate cases before they reach their full term [because it] saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism." *Id*. (quotations omitted).

## III.   ARGUMENT

Dr. Shi's probation should be terminated early because the § 3553(a) factors and the Judicial Conference criteria both favor early termination, and it is also in the public interest.

### A.      The Court should grant early termination to Dr. Shi.

First, Dr. Shi meets both requirements under § 3583(e)(1). His commendable conduct after

release and the interests of justice both support early termination.

### 1.    Dr. Shi's exemplary conduct.

Throughout his prison sentence and post-release supervision, Dr. Shi has been a model defendant with no disciplinary or behavioral issues. He has steadily worked on rebuilding his career within his area of expertise: mechanical and oceanic engineering. Because of his conviction, however, it is, unsurprisingly, extremely difficult for him to find work within the United States. Over the past 12 months, Dr. Shi has worked remotely on the wind turbine project for a private company, Kyotta Energy, in China. The project has now reached a point where Dr. Shi cannot do the work remotely anymore. Thus, for Dr. Shi to maintain this gainful employment, provide for his family, and contribute to society by paying taxes and helping to develop renewable wind energy, he must physically travel to China.

### 2.    All factors weigh in Dr. Shi's favor.

Pursuant to § 3583(e)(1), the principal inquiry here is a re-analysis of the sentencing factors in § 3553. *See also* 18 U.S.C. § 3564(c). The Court previously conducted such an analysis and made multiple factual findings at the sentencing hearing, and in its order granting compassionate release to Dr. Shi in September 2020.

At the sentencing hearing, the Court noted that "while the offense of conviction was deliberate and serious, the trade secrets theft did not cause actual monetary loss and involved relatively pedestrian technology that the Court felt Dr. Shi could have developed lawfully had he chosen to do so." ECF No. 380 at 9.[7]

Notably, the Court found that it is "*extremely unlikely that* [*Dr. Shi*] [*will*] *reoffend*" (ECF No. 380 at 9 (emphasis added)) because he lacks "the desire or the means or the opportunity to commit another crime like this one," and he has "good standing in the community and lack[s] any

---

[7] Dr. Shi incorporates the Court's Memorandum and Indicative Ruling (ECF No. 380).

significant risk of recidivism." Sentencing Hr'g Tr. at 77, 81 (Feb. 10, 2020). The Court also remarked that Dr. Shi is "a very respected man in [his] community and [he is] respected by [his] peers." *Id*. at 75. Dr. Shi is highly educated and requires no vocational or educational training. Moreover, Dr. Shi's "forfeiture of over $342,000, combined with the loss of [his] reputation and business, was sufficiently penal." ECF No. 380 at 9–10. Thus, the Court already determined that the § 3553(a)(1) and (a)(2) factors satisfied a compassionate release. That same analysis applies with equal force here, and supports early termination.

Finally, Dr. Shi meets all of the enumerated criteria from the Judiciary Policy manual. He has successfully reintegrated into his community by living with his family and working on complex engineering projects. He has fully complied with all of his supervision conditions and his probation officer reports that he is an model supervisee. He played no "aggravating" role in the charge underlying his conviction, he has no history of violence, and he has no other arrests. Finally, Dr. Shi does not have drug, alcohol, or psychiatric issues, and he poses no safety risks to anyone.

### 3.     Terminating Dr. Shi's supervised release is in the interest of justice.

A denial of the instant motion will almost certainly cause Dr. Shi to lose his job and income for his family. The Court did not intend to punish Dr. Shi with an injunction against all work involving offshore energy. Certainly his sentence should not prevent him from rebuilding his career and seeking out gainful, meaningful employment.

Dr. Shi has completed as much work on the wind turbine project as he can remotely, and he must now provide in-person consulting and instruction for the project's upcoming phases. His wind-turbine work has nothing to do with syntactic foam or Trelleborg or oil and gas. Quite the opposite—the work involves green energy with offshore wind turbines.

The energy sector is Dr. Shi's area of expertise. This is a large industry where syntactic foam is a tiny niche that Dr. Shi has fastidiously avoided since his arrest. Finally, there are limited

options for him to continue working with compensation commensurate with his expertise, particularly because his conviction makes work in the United States all but impossible to find.

Other federal courts have encountered similar issues, and determined that if a defendant meets the requirements under § 3583, and continuing that individual on supervised release would pose a risk to employment possibilities, the interests of justice counsel that termination is proper:

> There are two possible resolutions to this case. The Court can terminate Harris's supervised release, do away with crippling obstacles to his professional advancement, and make straight his path to rehabilitation and redemption. Or the Court can require Harris to serve his full term of supervised release, leave him blocked and at risk in his employment, and confer no benefit of any significance upon the victimized banks. Which resolution is 'in the interest of justice?' The question is not close. Justice requires the termination of Harris's supervised release.

*United States v. Harris*, 689 F. Supp. 2d 692, 695 (S.D.N.Y. 2010).

Similarly, in *Etheridge*, this Court found that the defendant was entitled to early termination of supervised release because he had effectively "turned his life around," and "satisifie[d] nearly all of the Judicial Conference factors relating to post-release conduct." *Etheridge*, 999 F. Supp. 2d at 197. Because the defendant met those factors, "further rehabilitation [was] not necessary," despite the government's argument that "citizens should require that [the] defendant receive every second of" a term of supervised release. *Id*. at 198 (quotation omitted); *see also United States v. Moore*, No. 01-238 (BAH), 2020 WL 435296, at *4 (D.D.C. Jan. 28, 2020) (granting early termination and rejecting government's contention that such motions "should fail when the defendant has not demonstrated anything of an unusual or extraordinary nature").

This Court should follow *Harris* and *Etheridge* here. Unlike the defendant in *Etheridge*, who met "nearly all" of the Judicial Conference criteria, Dr. Shi meets *all* of them. And like *Harris*, without an early termination, Dr. Shi's employment opportunity will be lost. Currently, his probation stands as a "crippling obstacle" to his employment, just as it did in *Harris*. There, the court concluded that termination was the proper outcome. This Court should conclude the same.

**B.**    **Alternatively, the Court should grant Dr. Shi's travel request.**

While Dr. Shi believes that the circumstances here all support early termination of his supervised release, he alternatively requests that the Court allow him to travel to China for a period of six months to work on the wind turbine project and visit his elderly uncle. The Court can essentially "toll" the period of his supervised release while Dr. Shi is in China, and then resume it upon his return to the United States. In that way, Dr. Shi would still be on supervised release for the entire 30 months – with an interim period while in China. While in China, Dr. Shi would continue to comply with any requests of his probation officer, and continue to submit his required reports through the online portal.

## IV.    **CONCLUSION**

Accordingly, Dr. Shi respectfully requests that this Motion be granted and that the Court enter an Order terminating his supervised release, or in the alternative, grant his request for international travel.

Dated: February 9, 2022                    Respectfully submitted,

                                           */s/ Peter Zeidenberg*
                                           Peter Zeidenberg (Bar No. 440803)
                                           Taniel Anderson (Bar No. 997406)
                                           Laura Zell (Bar No. 1044336)
                                           Michael Dearington (Bar No. 1025086)
                                           Arent Fox LLP
                                           1717 K Street, NW
                                           Washington, DC 20006-5344
                                           Tel: 202.857.6000
                                           Fax: 202.857.6395
                                           peter.zeidenberg@arentfox.com
                                           taniel.anderson@arentfox.com
                                           laura.zell@arentfox.com
                                           michael.dearington@arentfox.com

                                           *Counsel for Defendant Shan Shi*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 9, 2022, I caused to be delivered a true and accurate copy of the foregoing through the Court's electronic filing system to all counsel of record.


<u>*/s/ Peter Zeidenberg*</u>
Peter Zeidenberg